UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL WELPMAN and LADYE WELPMAN, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation et. al.,<br><br>Defendants. | CASE NO. C11-5371 MJP<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

**Preamble**

This case was tried on June 18th, 19th, 20th, 21st, and 27th, 2012, to the Honorable Marsha J. Pechman, United States District Court Judge, sitting without a jury. The Court considered the evidence before it, including the testimony of witnesses and the documents and exhibits admitted. The Court also heard argument and considered briefs and prior orders. The findings of fact and conclusions of law are as follows:

**Findings of Fact**

1. The Welpmans are owners of real property located in Kitsap County, Washington,

FINDINGS OF FACT AND CONCLUSIONS OF LAW- 1

located at 1180 Heron Ridge Avenue, Port Orchard, Washington.

2. Defendant State Farm Fire and Casualty Company (State Farm) is a foreign corporation organized under the laws of the State of Illinois, which is authorized to issue insurance policies to citizens of the State of Washington. Ty Holland is a claim representative employed by State Farm; Bet Gouras is a team manager employed by State Farm.

3. Defendant Jeff Reed Insurance Agency (Reed Agency) is a Washington corporation that is organized for the purpose of operating an insurance agency that sells insurance and financial products offered by several State Farm entities, including State Farm Fire & Casualty Company. The Reed Agency currently employs Melinda Amelsberg, who is licensed as an insurance producer by the State of Washington.

4. Defendant Jeff Reed and his marital community (Jeff Reed) are citizens of the State of Washington. Reed is an officer and office manager of Reed Agency.

5. On July 11, 2003, the Welpmans purchased a Homeowners' policy from State Farm to cover their property at 1180 Heron Ridge Avenue in Port Orchard, Washington. The Welpmans lived in at Heron Ridge until April 2008. They moved into a property in Seabeck in April 2008. They did not change their Homeowners' policy to a Rental policy until January 2009. The change was prompted by a loan modification on the Seabeck property. Even with the modification in the Seabeck property the financial demands of the payments proved too difficult and they moved back to Heron Ridge in July 4, 2009 and lived there until January 30, 2011.

6. On January 30, 2010, a fire damage the Welpmans' Heron Ridge home and personal belongings. That evening, Ladye Welpman telephoned State Farm to notify the company of the loss.

7. In addition to the Seabeck and Heron Ridge properties, the Welpmans owned

FINDINGS OF FACT AND CONCLUSIONS OF LAW- 2

several other properties used for investment income in the 2000's. In January 2008, they owned four properties that were insured by State Farm, purchased from the Reed Agency. When the housing market collapsed, the Welpmans struggled financially, resulting in foreclosures, short sales, and insurance policy cancellations. Between 2008 and 2009, three out of the four policies the Welpmans had with State Farm were cancelled as the result of foreclosures or non-payment of premiums. The only policy remaining in January 2010 insured the Heron Ridge property which sustained the fire loss.

8.   Mortgage payments on Heron Ridge were 5 months in default as of February 1, 2010.

9.   In 2009, and currently, the practice of the Reed Agency and its employees, including Melinda Amelsberg, is to make any policy changes immediately upon request for an insured, while the insured is either on the phone or present in person in the office. The Reed Agency's office is paperless.

10.  The Welpmans have no written documentation showing they instructed the agency to change their policy back to a Homeowners' policy prior to the date of loss. If a request to change the policy back to a Homeowners' policy had been made orally, it was the common practice for a Reed Agency employee to contemporaneously cancel the Rental Dwelling policy on the computer, take a new application, and modify agency records to reflect the change. Computer screens with cells to fill in appear while the customer is present on the phone or in person. This information is then filled in and the change is instantaneous when the contact is complete. The changes then become available for review by underwriting managers. Information from the screen is then used to generate mailed notices to customers.

11.  The pivotal issue in the case is whether Plaintiffs Michael and Ladye Welpmans

FINDINGS OF FACT AND CONCLUSIONS OF LAW- 3

(the Welpmans) gave a directive to change their Rental Dwelling policy to a Homeowner policy when they moved from Seabeck back to the Heron Ridge property in July 2009. The Court finds that they did not give a directive to the Defendants to make the change.

12. Michael Welpman who was charged with doing the task by his wife is not a reliable historian. His testimony overall was confused and contradictory. Each time he was asked for his version of events during investigation, deposition, or at trial his recitation of events changed. His timing of events was often contradicted by the documentation. In addition, he described events and discussions with Melinda Amelsberg that simply did not occur. In short, he is not a credible reporter of events and cannot respond to questions with a direct answer.

13. The Welpman's financial circumstances and their complicated real estate investment failures made their lives from 2009 and through March of 2010 chaotic and stressful. They were obviously over-extended financially and failed to make multiple mortgage and insurance payments, necessitating their own moves and property management headaches. The stress of the fire and loss of their household items further eroded Mr. Welpman's ability to accurately assess and report his contacts with the insurance company.

14. The Welpman's version of contacts with the Reed Agency to give this directive cannot be substantiated with independent proof like phone records. Mrs. Welpman's claim of contacts with the agency cannot be substantiated and her deposition and trial testimony are contradictory.

15. The records from the agent's office, from State Farm's underwriting department, and phone records, all support there being two calls between Mr. Welpman and the agency after March 1, 2009. The first call was on April 9, 2009 at 2:38 pm. The phone records show a call lasting over 18 minutes. The call was reflected in agency notes as a cancellation to the

1  Welpmans' 11th street property at the request of the insureds, due to their home's foreclosure.

2  The call was made before the Welpmans decided to move back to Heron Ridge, and the

3  Welpmans did not give any instructions to change their Heron Ridge policy during the call.

4      16.    The next documented call did not come until October 7, 2009. According to Ms.

5  Amelsberg, agency records, underwriting records, and Mr. Welpman's cell phone records, that

6  call lasted 3 minutes, and dealt with the cancellation of the Rental Dwelling policy on the 10th

7  Street property for non-payment of premiums.

8      17.    For several years prior to January 15, 2009, State Farm sent all notices and

9  correspondence to the Welpmans at Heron Ridge. After Welpmans changed their mailing

10 address to Seabeck and requested a policy change to Heron Ridge on January 15, 2009, State

11 Farm began sending notices to the Seabeck property until the date of loss. These facts are

12 consistent with the Agency's assertion that the Welpmans never informed the Agency of their

13 move back to Heron Ridge prior to the loss.

14     18.    Michael Welpman did not read mail from State Farm.

15     19.    On December 1, 2009, State Farm sent the Welpmans a renewal notice for the

16 Heron Ridge Rental Dwelling policy to the Seabeck address. The Welpmans were covered

17 under that Rental Dwelling policy on the date of loss. The notice was not returned to State Farm.

18     20.    The renewal certificate, as with most of the notices from State Farm, advised the

19 insureds "If you have moved, please contact your agent." Given the notice was sent on

20 December 2, 2009, the Welpmans had ample notice to alert the agency to change their policy to a

21 Homeowners' policy and to change their mailing address.

22     21.    The Welpmans' mailing address was changed by underwriting on February 5,

23 2010, after the date of loss.

24

FINDINGS OF FACT AND CONCLUSIONS OF LAW- 5

22. The Welpmans' certified policy of their coverages in effect on the date of loss shows their mailing address as the Seabeck address.

23. Ms. Welpman left for Texas on February 21, 2010, only a few weeks after the fire.

24. Michael Welpman left for Texas on March 26, 2010. His bank statements show he was driving through North Bend, Laramie, and Ogden, to get to Texas.

25. After the fire, State Farm responded by sending crews to assess damage to the Welpman's property. A member of the crew provided Mrs. Welpman with advice on making an inventory and directed her to forms that list household items. Jeff Reed visited with the Welpmans the next day. The agency supplied two $5,000 checks to the Welpmans promptly after the fire as an advance on any payment due for the dwelling.

26. The Welpmans made it clear that they believed they were entitled to the benefits of a Homeowners' policy. This did not match the agent's position. This caused an investigation to be launched concerning whether the agency had made a commitment.

27. State Farm assigned Ty Holland to conduct an investigation on the issue. Holland conducted a reasonable investigation by taking recorded statements, reviewing the underwriting file, and visiting the agency to see how records were kept and reviewed the agency's computer screens for making changes to coverage. The report was reviewed by supervisors and on April 16, 2010 the Welpmans were advised that State Farm denied their request to be considered under the Homeowners' policy. State Farm did not deny coverage under the Rental Dwelling coverage.

28. While the investigation was ongoing the insurance company made multiple contacts with the Welpmans. During this time period, the Welpmans hired and then discharged a

FINDINGS OF FACT AND CONCLUSIONS OF LAW- 6

public adjuster and by early March they had retained counsel.  It is reasonable for State Farm to assume all further communication would come from the attorney on the clients' behalf and State Farm was to cease contacting the Welpmans directly.

29. A parallel investigation into the cause and origin of the fire was conducted.  After a determination that the cause was an electrical appliance further investigation attempted to identify the product.  Identity of a malfunctioning product can benefit both the insurance company and the insured in order to identify additional sources of funds for recovery.

30. Mrs. Welpman made an inventory of the household damaged items prior to leaving for Texas.  Mr. Welpman was to deliver it to State Farm.  The inventory was never delivered.  Mr. Welpman's version of events and timing do not match the independent proof, i.e., the checks and credit card bills.

31. The Welpmans were insistent that Heron Ridge was their home and they did not mention moving or holding their home as a rental to State Farm or its representatives.

32. Plans to rent Heron Ridge to a friend after the Welpmans moved had not been finalized.  No date for possession, term of rental, or agreement on price was finalized.  The Welpmans did not advise their friend that they were severely behind in their mortgage payments.  No written documentation was signed.

33. The items testified to at trial as "being held for rental" are reasonable to hold in a rental property.  They were not discussed with the potential renter or made known to State Farm until the trial.

34. There was no breach of a reasonable agent's standard of care.  The Court does not accept the position of the Plaintiffs' expert Robert Sedillo.  Mr. Sedillo's opinions are outdated and do not shed light on current business practices for the running of a paperless office.

## Conclusions of Law

1. The court has subject matter jurisdiction and personal jurisdiction over the parties in this case. Venue is proper in the Western District of Washington.

2. To qualify for any relief in a breach of contract action, the plaintiff must show a breach of contract. Welpmans are not entitled to any damages for breach of their Heron Ridge Rental Dwelling insurance contract where they failed to provide the proof of loss required under the terms of the policy.

3. Welpmans have no claim for breach of a Homeowners' insurance contract against State Farm where there was no Homeowners' policy in effect for Heron Ridge on the date of loss.

4. The operative contract is the Rental Dwelling policy. Plaintiffs have failed to establish that they directed a change in the policy to a Homeowners' policy. They did not provide proof of loss required under the terms of the policy for their personal effects, rental loss, or items held for rental.

5. State Farm made a reasonable investigation of their claim that they had given the agent direction to change the policy and they came to a reasonable conclusion.

6. State Farm responded to the fire loss promptly and was not negligent in its handling of the loss.

7. There was not a denial of coverage in this instance but rather a dispute over coverage available.

8. There is no CPA claim that is supported by a violation of the Washington Administrative Codes.

9. There is no viable claim against Jeff Reed or the marital community as the only

Case 3:11-cv-05371-MJP   Document 72   Filed 07/06/12   Page 9 of 9

1  contacts were through his business, the Reed Insurance Agency, Inc.

2      10.    Defendants are entitled to a judgment of dismissal of all claims.

3  Dated this <u>6th</u> day of July, 2012.

[signature]

Marsha J. Pechman
United States District Judge

FINDINGS OF FACT AND CONCLUSIONS OF LAW- 9